Nott, J.
The defendants in this case, purchased a tract of land *489 under a decree of the court of equity, of which land the plaintiffs are in possession. After the purchase, the defendants gave notice to the plaintiffs, to quit the premises in a given time, or to pay ene hundred dollars per mouth rent. The plaintiffs having refused to do either, the defendants issued a warrant of distress, and seized upon the property in question. The plaintiffs obtained a replevin, to try the right of the defendants to distrain, and, upon the trial, the plaintiff obtained a verdict; and this motion is now made for a new trial. The question then is, whether the relation of tenant and landlord did exist between the parties, so that the defendants had a right to distrain ; if so, they are entitled to a new trial; if not, the motion must be refused. Without going further than the decisions of our own courts, I am of opinion that the motion ought not to prevail. The case of Jack v. Smith, 1 Bay, 310, and Smith v. The Sheriff of Charleston, 1 Bay, 438, are conclusive on the subject ; in both cases it is laid down in totidem verbis, “that no-distress for rent can be made, unless a specific sum be reserved, either by some lease, deed, or agreement, in writing or by paroland these decisions appear consonant to the principles of the common law. Rents at common law were of three kinds : rent service, rent charge, and rent seek. Rent service was where a tenant held by fealty, homage on corporal service, and certain rent. This was the only kind of rent for which a lord could distrain at common law, without reserving a special power of distress. Co. Litt. 06, 142. Gilb. on Replevin, 5. The rent charge was where there was not only a certain rent reserved by deed, but where the deed also contained a special clause authorizing the lord to distrain, where it was not paid ; and the rent seek was where a certain rent was reserved by deed without any clause authorizing a distress. In this species of rent, there was no remedy by way of distress at common law.Gilbert on Rep. 6. The distinction between these several kinds of rent is now abolished in England, and the remedy of distress is given in all cases by the statute, 4 George 2, c. 28 ; but a certain rent must be reserved in the same manner as before the statute. This statute does not appear to have been made of force in this State, but has been adopted in practice. A reservation of a specific sum as rent, eo nomine, is then the true criterion of a party’s right to distrain for rent arrear. Tn the principal ease there was no such reservation ; there was no privily of contract between the parties; it would produce the most pernicious consequences, if the law was otherwise; it would be putting it in the power of every man to convert any one into a tenant, who should happen to be *490 in possession of land to which he might fancy himself the owner, and to judge for himself the measure of damages, to which he wou!d be entitled, and to take redress in this summary way. The defendant’s are not without redress, if they have any claim; but they have mistaken their remedy, and, therefore, the motion must be refused.
Smith, J.
This case was submitted by agreement of the parties on defendant’s brief. The brief in substance stated that the plaintiffs were in possession of the premises, which consisted of a house and lot, that had been sold under a decree of the Court of Equity, and purchased by Charles Drayton, and Thomas Drayton ; and that the master, as their agent, gave notice thereof to the plaintiffs, and, at the same timet notified them to quit the premises, or to pay a monthly rent of one hundred dollars. The plaintiffs refused to accept the notice, a,nd insisted that they only were the legal owners of the house and lot. Upon this notice, the defendants made their distress. It was admitted that neither the plaintiffs, nor their father, under whom they claimed, were on the face of the proceedings, parties to the suit in equity, upon which was founded the decree of sale. It was insisted on by the defendants, that this court could not examine into, and pronounce illegal and void, the decree of another court of high and exclusive jurisdic. tion; and that the decree of the Court of Equity, must be presumed to be correct. It is true, this court has not the power, nor I believe, the disposition to examine into and declare void and illegal the decisions of the Court of Equity, if that were the question before us. But because the Court of Equity has exclusive and independent powers, it does not follow that it is omnipotent; and, therefore, without intrenching on that jurisdiction, we may enquire whether that decree has embraced the rights of the plaintiffs, in the premises in question. If it has not, what can be more absurd, than to say that this court should not listen to their rights, when offered to it in a case of which it had complete jurisdiction ? The decree of the Court of Equity may be final and conclusive upon all that were made parties to the case ; because they have had a full opportunity to make their defence, and show their rights in a court of competent jurisdiction, and of full power to do equity all around, and quiet every conflicting claim, as well as to establish the properly in the rightful owner. But it never could be admitted, 'without a violation of every principle of law, as well as of justice and equity, that the effect of a decree should extend to those who were never made parties to the suit on which it was founded, and *491 seal up their rights forever. Then it cannot be interfering with the powers of the Court of Equity to say, that these plaintiffs should be heard in defence of their rights. Between these par. ties, there was no such relationship as that which exists between landlord and tenant. It was not alleged that the plaintiffs held un. der the defendants by any contract between them, either written or parol; or that they came into possession under, or by any collusion with any other person, to whom the defendants had leased the premises. Some such relationship as this must have existed before the defendants could have distrained. If none such did exist, and the defendants were the rightful owners of the premises, the plaintiffs were trespassers and might have been proceeded against as such by an action of trespass; but could never be distrained upon as tenants. It would constitute a new species of redress to be ob. tained by the act of the party himself, if he were allowed to dis-train, when he ought to bring an action of trespass, and convert a trespasser into a tenant. This self-created landlord would also acquire great advantages ovor his adversary ; for, by compelling him into the character of a tenant, he would silence all opposition, because a tenant is not permitted to controvert his landlord’s title. I am, therefore, of opinion, that the defendants, if they had sustained any injury, have mistaken their mode of redress, and am against a new trial.
Colcock, J., concurred.